### BILL AINSWORTH V. THE STATE.

*No. 7446.   Decided June 17.*

1. **Continuance.** — See the opinion for an application by the defendant for a continuance upon the ground of absent testimony which this court holds was sufficient and should have been granted. The absent testimony was material to the defendant, and in view of the evidence adduced on the trial it can not be said that it was not probably true.

2. **Murder—Malice—Charge of the Court.**—A charge of the court in a trial for murder which omits to define "malice" and "malice aforethought" is insufficient, and such omission is not supplied by definitions of express and implied malice.

APPEAL from the District Court of Trinity.    Tried below before Hon. Norman G. Kittrell.

On January 17, 1889, at a negro festival near Groveton, in Trinity County, Jeff Meachum was shot and killed, and this conviction is for his murder.    The killing occurred about 10 o'clock at night.

In substance the evidence adduced on the trial is as follows:

Dr. J. R. Towns, a witness for the State, testified that he examined the gunshot wound on the body of deceased and probed the wound. The ball entered the right breast near the nipple and ranged to the left and downward at an angle of about forty-five degrees.   The person firing the shot must have been to the right of deceased and rather to his rear than his front.   The wound could not have been inflicted from the front or left of deceased.   Deceased must have been in a stooping position, or the pistol must have been somewhat elevated.   Deceased died a few moments after witness probed the wound.   Defendant and Jo Terry were present when witness examined the wound.   Defendant then said that a tall negro named Green Comer shot the deceased.   Defendant seemed to be grieved at the death of deceased.

W. M. Meachum, a witness for the State, and a brother of deceased, testified that he was not present at the shooting.   He reached the deceased as he was gasping his last breath.   He asked, "Who did this?" and defendant replied, "A negro named Green Comer did it."   This witness produced a coat and vest which deceased had on when he was shot, and the same were submitted to and examined by the jury, and showed that the bullet entered the right lapel of the coat, penetrated the open fold thereof only, ranged downward to the left, penetrating the vest on the right side of same a little lower than the hole made in the coat, and then entered the body ranging downward.

Green Comer, a witness for the State, testified that he was present when deceased was killed.   Deceased when shot had his hands on witness' shoulder, and they were talking to each other about keeping the peace.   Some of the colored folks were noisy but not quarreling.   Was just about to turn off from deceased when he heard the report of a pistol, and heard deceased say, "Bill, you have shot me."   Defendant replied, "I did not shoot you, but if you say I shot you I will."   There was no difficulty between deceased and witness.   When the shot was fired defendant was to the right of deceased.   Witness did not see who fired the shot.   Witness did not shoot deceased and does not know who did.   Witness did not run away from the place of the shooting, but went from there with his wife.   Witness had no pistol.   The festival was given by the colored folks.   Several white people were there.

When deceased was shot witness was standing in front of him, rather to his left.   Defendant was rather to the right of deceased and four or five feet from him.   Witness remained at the place of the shooting about one minute after the shooting.   Witness' brother, Dan Comer, was at the festival, but witness did not know where he was at the time of the shooting.   Witness did not see a white man behind deceased at the time of the shooting, but there might have been one there.   Witness was arrested and put in jail that night charged with murder, but was released next day after an inquest had been held.   When witness was carried to where deceased was the defendant was there and he rubbed his hand on my head and said, " Here is the man that done it."

J. A. Pike, a witness for the State, testified that he saw the deceased shot, but did not see who shot him.   Heard the shot and immediately saw a pistol fall at the right of deceased and at defendant's feet, and defendant picked it up, held it a moment, and put it in his pocket. When deceased was shot he exclaimed, "Boys, I am shot, and shot bad," and then said to defendant, "Bill, you shot me," and defendant replied, "G—d damn you, don't you say I shot you, or I will shoot you," and deceased replied, "No, I know you did not shoot me, for you are the best friend I have in the world."   When the pistol fired witness stated he was behind and near deceased.   Green Comer was to the left and in front of deceased.   Neither of the Comer negroes shot. Witness did not know deceased until that day, and had never seen the Comers before.   Defendant was behind and to the right of deceased and witness when the shot was fired.   Deceased at the time he was shot was in a difficulty with some negroes and had one hand in the collar of Dan Comer and his knife open in the other hand, and was shoving Comer back.   When defendant picked up the pistol several persons were grabbing for it.   After deceased was shot the defendant and some one else went with him and seemed to be taking care of him.

Walter Magee, a witness for the State, testified as follows: I was some thirty or forty yards away from where the shooting occurred.   I ran to the place immediately and asked who shot the deceased.   Defendant replied, " He ain't shot, but is only scared."   I asked defendant several times who shot deceased and he made no answer.   Defendant and others carried deceased off about one hundred yards and laid him down.   I went to where they were and asked again who shot the deceased.   Defendant then said, " The tall negro called Green did it."   I remarked that if I had a pistol I would shoot the man who did it.   Defendant about this time gave me a pistol that he said the negro shot him with. One barrel of the pistol was empty.   At the time or after he gave me the pistol he said he was afraid he would be implicated in it.   Defendant helped to take deceased to where he died and attended to him as long as he lived.

Bill Sanders, a witness for the State, testified that he was present at the shooting. There was a general row going on. Saw the defendant inching up to deceased or toward where the row was going on. At this time deceased had his hand on Green Comer's collar. Saw defendant take his pistol out of his pocket and point it at deceased and fire. Deceased said, "Bill, you have shot me." Defendant replied, "I didn't shoot you, but if you say I did I will shoot you." Defendant and deceased then whispered or talked low to each other, and deceased said, "You are the best friend I ever had." Saw defendant and one or two others reach for the pistol when it fell. Defendant got it. Dan Comer was there, but was some distance from and not in reach of deceased. Defendant was four feet from deceased when he shot. Defendant was to the right of deceased when the shot was fired.

Jim Banjo, alias Carter, a witness for the State, testified: Saw defendant shoot the deceased. Was the nearest person to deceased at the time. Saw defendant throw his pistol down on deceased and fire and shoot him in the right side. Deceased had hold of Green Comer's right shoulder at the time. Defendant was about four feet from witness and to the right side of deceased. There was a row going on among the colored people when the shot was fired, but no row between the whites and colored folks. Deceased had Green Comer by the collar and pushed him back, but they were not mad. Deceased did not have any difficulty with any of the colored people that night. About that time two more shots were fired and witness got away in a hurry, and the whole crowd scattered in every direction.

W. R. Wilburn, Frank Wilburn, and Frank Coleman, witnesses for the State, testified that some time after the killing, at a party at the house of one Mask, defendant and the witness Coleman had a quarrel, in which defendant said: "I have been accused of killing one damned son of a bitch, and have never denied it, and I would as soon kill another as not." There was testimony introduced by defendant impeaching the credibility of these three witnesses.

V. White, a witness for the defendant, testified that he was at the festival when deceased was killed, but did not see who did the shooting. Everybody ran off when the shot was fired. The negroes were badly scared. Heard Green Comer say as he ran off, "He's got it." Somebody asked, "Who shot him?" and Green Comer replied, "Never mind who did it, but by G—d he's got it."

John Ainsworth, a witness for and brother of the defendant, testified: Defendant and deceased were raised in the same neighborhood and had always been good friends. Defendant went to the festival at the solicitation of the deceased.

D. Poole, a witness for the defendant, testified that he knew that defendant went to the festival at the instance of the deceased. Deceased, defendant and witness had been raised together and had always been

friends. Witness went to deceased soon after the shooting and helped carry him off and staid with him until he died. The crowd dispersed as soon as the shot was fired. There was a general row going on at the time of the shooting.

Dan Denman, a witness for the defendant, testified that he was at the festival. Saw there was going to be a row and left. When he left defendant was sitting on the right of the door taking no part in the fuss and was perfectly quiet. Was three or four hundred yards from the place of the shooting when he heard the shooting.

The foregoing statement, together with that contained in the opinion, constitutes the case.

*J. P. Stevenson* and *B. F. Bean*, for appellant.

*R. H. Harrison*, Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE.—This appeal is from a judgment of conviction of murder in the second degree, the punishment being assessed at fifteen years in the penitentiary.

It appears from the record that a previous trial of this case had been had in the District Court, which resulted in a mistrial.

Defendant made an application for a continuance based upon the absence of four witnesses, two of whom under process of court were brought into court and testified in the case. The other two were Martha Reese and P. M. Teeter, Sr. Martha Reese was under attachment as a witness in the case. She had testified at a previous trial which resulted as aforesaid in a mistrial. Her testimony was in substance "that she was present at the time the deceased, Jeff Meachum, was shot at the festival—at the time of the shooting and some time afterward; that immediately before the shooting she saw there was a difficulty, and thinking her brother was involved in the difficulty she ran up to the edge of the platform, and just as she got to the edge of the platform she saw a man shoot, and immediately after the shooting the man ran off with a pistol in his hand, and she ran after him believing he had shot her brother. She pursued him until he ran behind a brick kiln, said brick kiln being about fifty yards from where the shooting occurred; that the reason she followed him was that she thought that her brother was shot and she wanted to identify the man that did the shooting."

The witness Teeter's testimony was desired by the defendant simply to prove the reputation for truth and veracity of Frank and Dick Wilburn, two of the principal State's witnesses against him. In qualifying the bill of exception reserved by the defendant to the overruling of his application for a continuance the learned trial judge says with regard to the witness Martha Reese: "The court did not believe her evidence probably true, having heard her on a former trial. She being an un-

educated negress, who has since left the county and hearing of the case, and the large number of witnesses who were present and many other parties having been shown to have been present, nothing was disclosed to show that anybody else had seen any such occurrence as she claimed to have seen, and that she, mid the shooting and excitement, could not have pursued an armed man in order to have identified him, satisfied the court that her evidence was not true, and to postpone the case on that ground would have been manifestly an injustice to the State and the large number of witnesses who were present."

We do not concur in the sufficiency of the reason given by the learned judge as to the testimony of this witness.   At the former trial, with this testimony before them, the jury failed to convict the defendant.   Some of them might have believed her testimony was probably true, and thus the mistrial occurred.   We can not say, when viewed in the light of all the other testimony in the case, that it is improbable or untrue.   In the excitement of the occasion this uneducated negress, in her anxiety about and efforts to ascertain the welfare of her brother, might have seen what the other parties not similarly situated with her, and also in a high state of excitement, did not see.   These other witnesses differ as to the identity of the party who did the shooting, and one of the main questions in the case was as to whether the defendant was the party who did the shooting or not.

We think the court erred in overruling the application for a continuance based upon the want of the testimony of the witness Martha Reese.

We call attention to another error which has not been noticed or commented upon by appellant's counsel in his argument or brief in the case, but which is apparent of record.   In his otherwise elaborate charge to the jury the learned trial judge nowhere defines the meaning of the terms "malice" and "malice aforethought."

A charge of the court in a trial for murder which omits to define "malice" and "malice aforethought," essential elements of murder, is erroneous, and such error is not cured by the definition of express and implied malice.   Crook v. The State, 27 Texas Ct. App., 198; Boyd v. The State, 28 Texas Ct. App., 137; Willson's Crim. Stats., sec. 1061; and Childers v. The State, ante.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Judges all present and concurring.